# CIRCUIT COURT OF THE CITY OF NORFOLK

Mildred McMillan

v.

Renal Treatment Center

April 27, 1998

Case No. (Law) L97-2674

BY JUDGE LYDIA CALVERT TAYLOR

Plaintiff brought a motion in the above-referenced case asking this court to compel the defendant to provide a copy of an incident report prepared at the defendant's center. At a hearing on April 13, no evidence was presented, so the Court asked each side to send a joint letter setting out the *facts* as to (1) when the incident took place, (2) when the incident report was prepared, (3) by whom, (4) to whom it was sent, (5) when the plaintiff and defendant each first contacted their respective attorneys, and (6) when the suit was filed. Although each side argued at the hearing the law on the issue of whether the report was work product and protected from discovery, the court told each side it could further brief the motion if they desired but to do so separately from the facts. The court specifically asked the attorneys not to give the court any argument in the factual letter but rather to set out any further argument separately and urged the parties to try to send the court an agreed-upon joint letter as to the facts. They agreed. Because the attorneys had presented arguments at the hearing, neither seemed interested in supplementing or adding to its previous arguments.

In response to the court's request, Mr. Charters, counsel for the defense, sent the court a separate (not joint) letter dated April 14, which failed to set out most of the facts requested, but rather reargued the defense case. The specific facts the court requested about the preparation of the incident report, which the attorneys had stated they would determine within a couple of days

of the hearing, were not included. The court received nothing from plaintiff's counsel. Mr. Charters did enclose with his letter a copy of the incident report itself for *in camera* inspection, as requested.

Feeling a bit frustrated with Mr. Charters' letter, the court telephoned Mr. Charters and Mr. Bennett jointly, April the 16th or 17th, but was only able to get Mr. Bennett as Mr. Charters was out of the office. However, another attorney from Mr. Charters' medical malpractice section graciously agreed to participate in the conference call so that the court could clarify, without having an *ex parte* conversation, what it needed. Since then, the court has heard nothing further from either side and thus has been forced to rely on the facts (but not the legal conclusions) contained in Mr. Charters' letter, as well as supplementary facts provided by Mr. Bennett in the joint conference call.

The facts in Mr. Charters' April 14 letter are that the "incident report" was prepared by the nurse who is alleged to have been involved in the incident in question, with the nurse manager adding "comments and signature" at the bottom. The enclosed incident report, based on the court's *in camera* inspection, is on a form for Renal Treatment Centers, the form apparently being used at least region wide, as the name of the facility is filled in as "Norfolk;" nothing on the form itself indicates it is prepared in anticipation of litigation. Mr. Charter's letter acknowledges that no initial contact had been made with their respective counsel by either the plaintiff or the defendant at the time of the preparation of the report. Mr. Charters includes in his letter two legal conclusions that the court has not considered as part of the facts of the case. First, he writes that the report was prepared "in anticipation of this litigation," which is conclusory and is not a fact. Second, he adds the conclusion that the report was prepared after it was clear that Mrs. McMillan was making a claim of negligence "against Mrs. Johnson."

No facts, however, were set forth to explain why that would be "clear" at that point. Nothing written in the report itself gives any indication that Mrs. McMillan was making any claim against Mrs. Johnson, although the report sets out that Mrs. Johnson "denied" what Mrs. McMillan told the doctor as to what Mrs. Johnson had done. The report further states that Mrs. Johnson did not accept responsibility for the incident. Those facts, however — denial of the facts and a refusal to accept responsibility by the nurse — are facts setting forth the nurse, Mrs. Johnson's perspective. They state nothing of any claim or demand by Mrs. McMillan, the patient, and thus fall far short of suggesting what Mr. Charters argues, to wit, that before the incident report was prepared, it had become "clear that Mrs. McMillan was making a claim of negligence against Mrs. Johnson." Mrs. McMillan apparently had stated certain facts as

to what Mrs. Johnson had done, which facts Mrs. Johnson was denying. That denial by Mrs. Johnson does not signify, however, that Mrs. McMillan was making the type of claim of negligence that, under the relevant case law, would transform an incident report into one prepared "in anticipation of litigation."

Mr. Bennett's statement, unrebutted by Mr. Charters, is that, at the time the incident report was prepared by the defendant, there had been no contact by Mrs. McMillan or by anyone else on her behalf with the Renal Treatment Center. Mrs. McMillan may have expressed displeasure with her treatment and gone to the hospital to remedy the situation, but at the time the report was prepared, she had not yet contacted an attorney or stated to anyone that she would be making a claim.

Based on the above facts, the court does not believe that the incident report was prepared in anticipation of litigation, so as to qualify for protection against discovery as work product under Virginia case law. Such a determination must be based on a case-by-case, fact-specific analysis, looking to the nature of the relationship between the plaintiff and the defendant at the time the incident report was prepared and the nature and quality of the parties' legal contacts, an analysis commended to trial courts by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947) (interpreting Fed. R. Civ. P. 26(b)(3), which is identical to Virginia Rule 4:1(b)(3)). *See also McCullough v. Standard Pressing Machines Co.*, 39 Va. Cir. 191 (Fairfax County 1996) (Vieregg, J.); *see generally* W. T. Benson, *Corporate and Institutional Accident Investigations as Work Product Pursuant to the Rules of the Supreme Court of Virginia,* 17 U. Rich. L. Rev. 285 (1983).

Even if the material was prepared in anticipation of litigation under Virginia Rule 4:1(b)(3), however, the report would still be available to the plaintiff upon a showing of "substantial need" by the plaintiff and plaintiff's inability to obtain "the substantial equivalent" of the report "without undue hardship." The parties stipulated, when before the Court at the April 13 hearing, that Mrs. Johnson has since left the employ of the Renal Treatment Center and cannot be located by either counsel, and Mrs. McMillan has since died. This court therefore finds that the plaintiff, the personal representative of the deceased, Mrs. McMillan, has "substantial need" of the report and is unable to obtain the "substantial equivalent" of the report. Given the fact that neither of the two eye witnesses to the dispute, the patient, Mrs. McMillan, or the treating nurse, Mrs. Johnson, is available to be deposed or participate in answering any discovery, the court finds that the information is not otherwise available to the plaintiff, and therefore, the plaintiff is entitled to the incident

398

report under Rule 4:1(b)(3). A copy of the report therefore is enclosed for the plaintiff's use.