Floyd C. Smith

    v.

National Railroad
Passenger Corp.

January 2, 1991

Case No. LS-1343-3

By JUDGE T. J. MARKOW

Plaintiff, a railroad worker, claims damages from his employer, the defendant railroad, under F.E.L.A., 45 U.S.C. §§ 51-60. Plaintiff served interrogatories and a request for the production of documents and things on the defendant, National Railroad Passenger Corporation (NRPC). Currently before the Court is plaintiff's motion to compel the defendant to answer certain interrogatories and to produce certain documents, photographs, and/or films.

Paraphrasing interrogatories 5, 6, 7, and 20, plaintiff seeks any report of investigations conducted by the NRPC before suit was filed. Additionally, plaintiff seeks any reports, photographs, identification of witnesses, etc., of any surveillance it may have conducted of the plaintiff. NRPC objects to both requests on the basis that these are materials prepared in anticipation of litigation. In response to NRPC's objections, Smith has filed a motion to compel discovery, which brings this matter for decision.

The first category of materials sought, i.e., reports of investigations conducted by the defendant prior to

the filing of suit raises the issue whether these materials were prepared in the usual course of business and thus were not prepared "in anticipation of litigation or for trial." Plaintiff argues that to be considered as in "anticipation of litigation" there must be an immediacy to the threat of litigation. Here defendant conducted its investigation within a few days of the injury in accordance with its normal policy and procedure. It conducts investigations of job injuries for, among other reasons, settlement of claims, correction of safety defects, and for litigation if the case progresses to that point.

The second category of materials, i.e., whether there was a surveillance of the plaintiff after the initiation of litigation and, if so, production of the fruits of the surveillance, implicates a different part of Rule 4:1(b)(3). Admittedly, this material is prepared in anticipation of litigation or for trial. Plaintiff says he is entitled to its production, however, because he cannot obtain its substantial equivalent without undue hardship; that he needs the material to determine if photographs, etc., are accurate so that he may be prepared for their introduction at trial and that possession of this information may promote settlement.

NRPC relies on the work product doctrine embodied in Rule 4:1(b)(3) of the Supreme Court Rules in defense of its refusal to produce the requested information. The seminal opinion on "work product" is *Hickman v. Taylor*, 329 U.S. 510 (1946), which adopted the term, previously coined by the Court of Appeals in its consideration of the case. The description the Supreme Court used illustrates the impossibility of a specific listing of what the term would encompass: "This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *Id*. These are the "tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." Rule 4:1(b)(3) (Repl. Vol. 1990).

This broadly sweeping definition, providing ample opportunity for arguments about what materials do or do not fall within it, is coupled with an exception that allows production "upon a showing that the party seeking discovery has substantial need of the materials and that

he is unable without undue hardship to obtain the substantial equivalent." Rule 4:1(b)(3). This, of course, provides other bases for disputes over what is "substantial need," "undue hardship," and "substantial equivalence."

These disputes have produced a plethora of cases but not in Virginia, where precedent on discovery matters is almost nonexistent. However, Virginia adopted the Federal Rules on discovery "verbatim so far as is consistent with Virginia practice . . . to enable Virginia lawyers and circuit court judges to use federal precedents to guide Virginia practice in the field of discovery." W. H. Bryson, *Handbook on Virginia Civil Procedure* 319 (2d ed. 1989). How much guidance the federal cases give is debatable, though, as the holdings are widely divergent on the issues in the case at bar. Supreme Court Rule 4:1(b)(3) corresponds to Federal Rule of Civil Procedure 26(b)(3).

Plaintiff asserts that *McDougall v. Dunn*, 468 F.2d 668 (4th Cir. 1972), states the proper test in order to determine whether investigation reports assembled by claims adjuster or other employees of a defendant prior to the initiation of litigation are subject to discovery. The *McDougall* court:

> applied without adopting the test set forth in *Thomas Organ Co. v. Jadranska Slobova Plovidba*, 54 F.R.D. at 372 (emphasis in the original): "This trend which was followed in the framing of Rule 26(b)(3) compels the court to conclude that *any* report or statement by or to a party's agent . . . which has not been requested by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise must be conclusively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege.

*State Farm Fire and Cas. Co. v. Perrigan*, 102 F.R.D. 235, 237 (W.D. Va. 1984).

In a logical and persuasive article, Todd Benson analyzed *McDougall*, concluding "*Thomas Organ Co.* is not good law. Because *Thomas Organ Co.* is the foundation for the *McDougall* decision, Virginia should not look to *McDou-*

*gall* for guidance." W. T. Benson, *Corporation and Institutional Accident Investigations as Work Product Pursuant to the Rules of the Supreme Court of Virginia*, 17 U. Rich. L. Rev. 285, 309 (1983). Benson concludes that *Thomas Organ Co.* "missed or ignored" the plain language of the Advisory Committee Comments, when it equated "regular course of business" with "in conjunction with or for an attorney." The Advisory Committee said "materials assembled in the ordinary course of business, or pursuant to the public requirements *unrelated to litigation, or for other nonlitigation purposes* are not under the qualified immunity provided." Benson points out that:

> [t]his clearly indicates that materials prepared in the "regular course of business" are those materials unrelated to litigation or for nonlitigation purposes. Consequently, if an insurance adjuster regularly prepares reports in anticipation of litigation, his reports are *not* prepared in the "regular course of business" for purposes of the above-quoted paragraph.

*Id.* at 304.

Further, Benson says that the Advisory Committee did refer to a "trend" in framing Rule 26(b)(3), but not the trend described in *Thomas Organ Co.* The words of the Advisory Committee were : "Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative's action on his behalf." (quoting *Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery*, 48 F.R.D. 497 (1970)).

Benson advocates that a "reasonably foreseeable" test be applied by the circuit courts in Virginia to determine what constitutes materials prepared in anticipation of litigation. If a reasonable person in the shoes of the party resisting discovery would have anticipated or reasonably foreseen litigation at the time the material was produced, it should enjoy the qualified protection of Rule 4:1(b)(3). This court finds that test and Benson's rationale for it more consistent with the language and

purpose of the rule than does the mechanical "if it was prepared in the ordinary course of business, it is not protected" analysis found in *McDougall*. If that were the proper test, how would the investigations, analysis, etc., of the plaintiff's attorney be protected from discovery? Clearly this material is prepared in the usual course of the attorney's business. Nothing in Rule 4:1(b)(3) limits the material to that produced by attorneys. To the contrary, the most recent amendments to the Federal Rules of Civil Procedures include other producers of material within the realm of the work product protection.

Benson says that in interpreting the rule, ordinary principles of statutory construction should be employed. Among those principles is the normal usage of language found in dictionaries.

Using this analysis on the rule, one must discern the meaning of "anticipation of litigation."

The dictionary (Webster's Third New International Dictionary 94 (1971)) defines anticipation to mean "to consider in advance: give advance thought, discussion or treatment." The Supreme Court of Virginia, which promulgated the rule, used the word "anticipate" recently and equated it with "reasonably foresee." (*citing Harris v. Bankers Life and Casualty Co.*, 222 Va. 45, 278 S.E.2d 809 (1981)). To determine whether a result was reasonably foreseeable, the court has applied the following test: "looking at the consequences, were they so improbable or unlikely to occur that it would not be fair and just to charge a reasonably prudent man with them." (*citing Norfolk & W. Ry. v. Whitehurst*, 125 Va. 260, 264, 99 S.E. 568, 569 (1919)). *Id.* at 293-94. Nothing in the definition of "anticipation" suggests that what is being anticipated be immediate. The concept of anticipation does not mean that the litigation must be immediate, nor need there be knowledge that an attorney has been hired or has threatened suit.

Here plaintiff was injured while on the job. The evidence establishes that NRPC conducts an investigation of every reported employee injury as soon as possible after its occurrence for several reasons, one of which is that the matter may result in litigation. Applying a reasonably prudent person standard to these facts, the court finds that in the face of the event which gave rise

to the motion for judgment, a reasonably prudent railroad employer could anticipate litigation as a result, making the reports which were produced from the investigations of the accident work product protected by Rule 4:1(b)(3).

*Almaguer v. Chicago, Rock Island & Pacific Railroad Co.*, on which NRPC relies seems to have applied a proper test when it said:

> I think it is fair to conclude from the Advisory Committee's Note and the cases cited in it that statements taken by a claim agent immediately after an accident are taken in anticipation of litigation . . . . The anticipation of the filing of a claim against a railroad, when a railroad employee has been injured on the job, is undeniable, and the expectation of litigation in such circumstances is a reasonable assumption.

55 F.R.D. 147, 149 (D. Neb. 1972); *accord Eoppolo v. National R.R. Passenger Corp.*, 108 F.R.D. 292 (E.D. Pa. 1985).

This conclusion furthers the objective of the rules "that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side." *See Proposed Amendments to the Federal Rule of Civil Procedure Relating to Discovery*, 48 F.R.D. 497, 501 (1970), citing with approval Field & McKusick, Maine Civil Practice 264 (1959).

Having determined that the reports were prepared in anticipation of litigation and thus protected as work product, the next inquiry is whether Smith has met his burden of showing that he has substantial need of the material and is unable, without undue hardship, to get its substantial equivalent. He has been given the names of all persons having knowledge of the injury. His own investigation should produce substantially the same information he seeks from the NRPC without undue hardship. What he seeks is the defense case without the effort of his own investigation. He has made no showing of circumstances which would meet those requirements for disclosure; therefore, his motion to compel the production of the investigative reports is overruled.

The second objection which NRPC made was to revealing whether it had instituted surveillance of Smith and, if so, to production of the results obtained. There is also a split of authority on this issue. *See* Annotation, *Photographs of Civil Litigants Realized by Opponent's Surveillance as Subject to Pretrial Discovery*, 19 A.L.R. 4th 1236 (1983). The court finds more persuasive the line of cases which favor protection of surveillance from discovery.

Plaintiff concedes that the surveillance is instituted in anticipation of litigation or for trial. The issue, then, is whether the plaintiff has established "substantial need" of the information and cannot without "undue hardship" obtain its "substantial equivalent." *See* Rule 4:1(b)(3).

In addressing the issue, the Supreme Court of Missouri said that "the discovery procedure has not been formulated for the benefit of a litigant who is already in possession of all the facts . . . . Certainly, plaintiff McMillen knows all the material facts concerning her own injuries, any existing disabilities, and her activities." *State v. McMillen*, 351 S.W.2d 22, 26 (Mo. 1961).

In his dissent to *Zimmerman v. Superior Court*, 402 P.2d 212, 219 (Ariz. 1965), Vice Chief Justice Struckmeyer pointed out:

> The category of surveillance evidence . . . has two obvious attributes: First, it pertains to facts which come into existence after an accident occurs. As such, it has nothing to do with the merits of the plaintiff's right of action. Second, it almost invariably concerns facts which are better known to the plaintiff than to the defendant, facts which in all fairness should be known equally to both parties but which, because of their nature, often are impossible for the defendant to discover with certainty. It is therefore a fertile field for fraud and magnification and a field in which the parties are not on even terms. Because of the strong public policy against perjury and because the parties are often not on even terms in the presentation of evidence of the exact extent of a plaintiff's injuries, a defendant should not

be required to disclose the result of his surveillance.

Admittedly, both the *McMillen* and *Zimmerman* cases predate the adoption of FRCP 26(b)(3) and its Virginia counterpart. Their rationales are, nevertheless, persuasive as they articulate a policy against perjury and in favor of accurate fact finding which is the foundation on which the court system rests. The court agrees with this position. It answers the argument that plaintiff makes that the policy behind the discovery rules is to permit broad discovery, making all the evidence available to both sides. *See also Martin v. Long Island R.R. Co.,* 63 F.R.D. 53 (E.D. N.Y. 1974).

In addressing that same concern while sustaining a party's objection to interrogatories, one court said that the fact that the plaintiff might already have the information sought was not necessarily dispositive, but that "it is apparent that the object of these interrogatories is not to discover facts in the discovery sense of the word, but instead to frustrate an effective cross-examination and to avoid the possibility of impeachment. Such was not the intent of the framers of our rules of discovery." *Mort v. A/S D/S Svendborg,* 41 F.R.D. 225 (E.D. Pa. 1966); *accord Hikel v. Abousy,* 41 F.R.D. 152 (D. Md. 1966).

Some courts have expressed concern that the promotion of settlements might be inhibited by a refusal to make surveillance information available to plaintiffs. *See e.g. Moore v. CSX Transportation, Inc.,* Case No. LR-355-1, Circuit Court City of Richmond (Hughes, J.). Others have questioned the ability of a party to efficiently and effectively authenticate films which may be "instrument[s] of deception . . . . Distances may be minimized or exaggerated . . . . The editing and splicing of films may change chronology of events . . . . Thus, that which purports to be a means to reach the truth may be distorted, misleading, and false." *Snead v. American Export-Isbrandtsen Lines, Inc.,* 59 F.R.D. 148 (E.D. Pa. 1973). While these are legitimate concerns, they are not so weighty as to

counterbalance the promotion of the disincentive to perjury provided by the possibility of effective impeachment.

We need not even discuss these policy issues and should instead interpret the clear language of the rule in the light of the facts of this case. Has the plaintiff established a substantial necessity for the information sought, or that he cannot obtain the substantial equivalent without undue hardship?

If the diligence and industry of NRPC has revealed, through surveillance, evidence of exaggeration or outright lying on the part of Smith, this court will not strip it of the advantage gained without a showing which will meet the requirements of the rule to overcome the protected status of the material. This court finds that any facts learned by the surveillance is within the plaintiff's knowledge he has the substantial equivalent of anything that has been learned by the defendant and has it without undue hardship. The rule does not require that he have it in the same form as does his adversary. The Supreme Court of Virginia said plainly that "[w]here both parties have an equal opportunity to investigate, and where all the witnesses to the accident are known and available to both sides, discovery should not be granted." *Rakes v. Fulcher*, 210 Va. 542, 756, 172 S.E.2d 751 (1970). The plaintiff has not borne the burden of overcoming the protection of the surveillance materials.

For the reasons stated, plaintiff's motion to compel will be overruled.