## CIRCUIT COURT OF FAIRFAX COUNTY

Tamara Lynn McCullough et al.

v.

Standard Pressing Machines Co. et al.

April 18, 1996

Case Nos. (Law) 138627 and 138623

BY JUDGE ARTHUR B. VIEREGG, JR.

In the captioned action, the plaintiff, Tamara Lynn McCullough, seeks recovery for personal injuries and property damages suffered in an automobile accident. On Friday, April 5, her counsel presented argument in support of her Motion to Compel Production of Document or Tangible Thing. McCullough served a subpoena duces tecum on The Hartford Mutual Insurance Company, the insurer of the Defendants, John Carter Counts and Standard Pressing Machine, Inc., requiring the production of any tape recording or transcript of statements made by Counts to The Hartford relating to the accident. Defendants and The Hartford appeared by defense counsel and opposed McCullough's motion and moved to quash her subpoena.

The accident, which involved multiple vehicles, occurred on August 24, 1994. Three days later, Counts gave an oral statement about the accident to a claims adjuster acting on behalf of The Hartford "months" before McCullough made a claim or initiated this action. Such statements are routinely taken from The Hartford's insureds in connection with motor vehicle accidents. The Hartford currently possesses the statement.

The Hartford and the defendants contend that Counts' statement was furnished in anticipation of litigation and is therefore privileged as "work product" so that the plaintiff must make a particularized showing of need in order to obtain it. Rule 4:1(b)(3). As a threshold matter, McCullough

argues that The Hartford and the defendants have not met their burden of demonstrating that the statement was prepared in anticipation of litigation and, thus, constitutes privileged work product. She further contends that even if the statement constitutes work product, Counts' inconsistent statements in discovery demonstrate a need for production of the document.

## I. *The Burden of Establishing the Work Product Privilege*

As McCullough contends, the proponent of a privilege generally has the burden of establishing that a document or communication is subject to the privilege claimed. *Robertson v. Commonwealth*, 181 Va. 520, 540 (1943); *see also, Binks Mfg. Co. v. Nat. Presto Industries, Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983); *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 (M.D. Fla. 1990). Accordingly, Counts, Standard, and The Hartford have the burden of demonstrating that The Hartford report is immune from disclosure as work product.

In the course of briefing and orally arguing this motion, the parties do not seriously dispute the following facts: the date of the accident; the date of the communication between Counts and The Hartford adjuster; that McCullough's injuries arose out of a multiple-car collision on Interstate 66; that McCullough's injuries were serious,[1] and that multiple potential claims arose from the accident.[2] It is also apparent that The Hartford is the automobile liability insurer of Standard's vehicle which was involved in the accident. However, the defendants have not otherwise presented testimony or other evidence to demonstrate that the adjuster's report is cloaked by the work product privilege. The defense may, therefore, only prevail in its opposition to McCullough's motion if the foregoing facts are sufficient to demonstrate that the adjuster's statement was prepared in anticipation of litigation. If the defense prevails in that regard, this Court must then address whether McCullough has demonstrated a particularized need for the statement.

---

[1] In her Motion for Judgment, McCullough alleges that as a result of the accident, she suffered permanent physical injuries, pain and suffering, medical anguish, medical expenses, and property damages for which she seeks a judgment in the amount of $1,000,000.

[2] Defense counsel asserts but presents no witnesses in support of the proposition that The Hartford adjuster received claims from the insurers of others in the accident suggesting that Counts was responsible for the accident in which McCullough was injured. For purposes of this motion, The Hartford's receipt of these claims was not established.

## II. *Was The Hartford Adjuster's Report Necessarily Prepared in Anticipation of Litigation?*

The origin of the work product privilege is the United States Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495 (1947); the privilege was later incorporated in Rule 26(b)(3) of the Rules of Civil Procedure. Virginia Rule 4:1(b)(3), patterned after Rule 26(b)(3), provides in pertinent part:

> *Trial Preparation; Materials.* — Subject to the provisions of subdivision (b)(4) of this Rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this Rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

In both Rule 26(b)(3) and Rule 4:1(b)(3), work product materials are defined as "documents or tangible things otherwise discoverable under subdivision (b)(1) of this Rule and *prepared in anticipation of litigation.*" (Emphasis added.) The adjuster's statement is clearly "otherwise discoverable under subdivision (b)(1)." It also constitutes "any matter [not privileged] which is relevant to the subject matter involved in the pending action," and it "appears reasonably calculated to lead to the discovery of admissible evidence." Rule 4:1(b)(1). Therefore, the classification of The Hartford's adjuster's report as work product depends upon whether or not the report was "prepared in anticipation of litigation or for trial." Rule 4:1(b)(3).

The test generally developed by courts to determine whether documents constitute work product is whether the primary purpose for generating the document was the prospect of litigation. *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981), *cert. den.*, 454 U.S. 862 (1981); *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp. Emer. Ct. App. 1985); *Binks Mfg. Co., supra.* When insurance adjuster reports are involved, many courts have held that the primary purpose for the preparation of such reports is not the prospect of litigation but the conduct of routine insurance business. These courts reason that (1) before an insured's insurance claim

can be accepted or rejected, the insurer must first investigate the claim in order that a decision to pay or reject the claim can be made, and (2) adjuster reports are therefore not prepared in anticipation of litigation. *Thomas Organ Co. v. Jadrankska Slobodna Plovidba*, 54 F.R.D. 367 (N.D. Ill. 1972); *but see Almaguer v. Chicago, Rock Island & Pacific Railroad Co.*, 55 F.R.D. 147 (D. Neb. 1972). On the other hand, other courts have held that the question of whether or not adjuster reports constitute work product must be decided on a case-by-case basis. However, even these courts, adopting varied rationales,[3] have usually concluded that adjuster reports are not motivated by the prospect of litigation if prepared before a claim is acted upon by the insurer and consequently are not privileged as work product. *See, e.g., Carver*, 94 F.R.D. 131; and *see generally, Discovery and Depositions*, 10 Federal Procedure, L. Ed., § 26:128, 449.

In view of such decisions, including for instance, *APL Corp. v. Aetna Casualty & Surety Co.*, 91 F.R.D. 10 (D. Md. 1990), relied upon by McCullough, it might be supposed that adjuster reports prepared in advance of the filing of a claim may virtually never qualify as privileged work product. The difficulty with such a supposition, however, is that most cases denying work product protection to adjuster reports involve "first party" insurance coverage, as distinguished from "third party" or liability insurance coverage as is involved in this case.

First party insurance is procured to indemnify an insured against a covered loss the insured has sustained. Adjuster reports prepared with respect to such claims are routine and are usually intended to enable the insurance company an opportunity to pay or deny the claim. Further, the prospect of litigation is remote since it will ensue only if a dispute arises between the insurer and insured regarding the insurer's contractual obligation pursuant to the insured's policy.

By contrast, in the case of third party or liability insurance, an insured obtains insurance to protect against liability claims of third persons.[4] That

---

[3] Some of these courts *presume* adjuster reports are not prepared in anticipation of litigation, *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655 (S.D. Ind. 1991); other courts hold that the court must evaluate when the focus of the insurer's activities "shifts" from routine business to preparation for litigation but find that the motivation for the report is not litigation if it predates the making of a claim. *Carver v. Allstate Ins. Co.*, 94 F.R.D. 131 (S.D. Ga. 1982).

[4] Standard automobile liability insurance policies insure against liability arising from an insured's ownership, use, or maintenance of a motor vehicle. *See*, 12 George S. Couch, *Couch on Insurance* 2d (rev. ed.), § 45.1 (1981).

liability, moreover, is an insured risk which, for all practical purposes, can only be established in favor of the third party against the insured by litigation in a court of law. Accordingly, when an insured is involved in an insured event occurrence, such as an automobile accident, reasonably giving rise to risk of liability, the liability insurer has an incentive to investigate the circumstances surrounding that occurrence in order to fulfill its obligation to its insured to defend against a third party potential action. Because liability insurance, unlike first party insurance, essentially constitutes "litigation insurance," *Kandel v. Tocher*, 256 N.Y.S.2d 898, 900 (1965), many courts have held that adjuster reports prepared on behalf of liability insurers are prepared in anticipation of litigation and constitute privileged work product. *Kandel, supra*; *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993); *Ashmead v. Harris*, 336 N.W.2d 197, 201 (Iowa, 1983). *See also, Fontaine v. Sunflower Beef Carrier, Inc.*, 87 F.R.D. 89 (E.D. Mo. 1980); *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Co.*, 123 F.R.D. 198, 201 (M.D. N.C. 1988) (*dicta*).

As Justice Breitel cogently reasoned in *Kandel*:

> [Liability] insurance has as its purpose the defense and settlement of claims made against the insured because of the insured's liability at law to respond in damages for his acts or omissions in the ownership or operation of an automobile. The policy requires the insurer to represent and defend the insured in the event an action such as this is brought against him. Whether a claim is accepted or rejected in advance of litigation, or must be resolved in the litigation process, is incidental to the ultimate purpose of protecting the insured from liability for payment under an enforceable judgment. In consequence, once an accident has arisen, there is little or nothing that the insurer or its employees do with respect to an accident report except in contemplation and in preparation for eventual litigation or for a settlement which may avoid the necessity of litigation. In this connection, therefore, it is immaterial whether attorneys have actually been assigned or employed by the insurer to represent the insured in the settlement or defense of the claim. For parallel reasons, it is immaterial whether the action based on the claim has been begun or not. On this view, automobile liability insurance is simply litigation insurance.

256 N.Y.S. 2d at 899-900.

And later, in his opinion, Justice Breitel advanced the following reasons why, in the case of liability insurance, the work product issue relating to insurance adjuster reports does not depend upon whether or not defense counsel had been retained:

> Lastly, it should be emphasized that the distinctions involved in these problems of disclosure are not merely technical and do not flow from accidental differences in statutory language. An important policy consideration is involved. It is of the greatest importance that an insured be encouraged to make complete and candid disclosure to his liability insurer. The purpose is just as significant as in the case of the attorney-client relationship in the absence of insurance. Indeed, as already noted, automobile liability insurance, just because it is litigation insurance, is an institutionalized substitute for the individualized attorney-client relationship in litigation or contemplated litigation.

256 N.Y.S. 2d at 902.

Several Virginia circuit judges have reached the same conclusion in cases involving liability insurance, *see, e.g., Lewis v. Pomponio*, At Law No. 129912, 19th Judicial Circuit of Virginia, June 9, 1995 (Hon. F. Bruce Bach); *Whitehurst v. Lloyd*, At Law No. 15964, 20th Judicial Circuit of Virginia, September 6, 1995 [37 Va. Cir. 224] (Hon. Thomas D. Horne), while others have reached the opposite conclusion. *Cf., Schoonmaker v. Rogester*, CL 94-3969, 2nd Judicial Circuit of Virginia, August 17, 1995 (Hon. Robert B. Cromwell, Jr.); *Overton v. Dise*, At Law No. 130350, 19th Judicial Circuit of Virginia, November 9, 1994 [35 Va. Cir. 177] (Hon. Robert W. Wooldridge).

Although not all insurance adjuster reports prepared for liability insurers necessarily constitute work product, the facts of this case lead me to conclude that The Hartford's adjuster's report was prepared in anticipation of litigation and is privileged as work product. The Hartford insured Standard and its employee, Counts, against liability to third parties arising from the ownership, operation, or maintenance of the insured vehicle. A multi-vehicle accident occurred involving serious injuries to strangers to the insurance contract. On the basis of these circumstances, The Hartford has sustained its burden by demonstrating that its adjuster's report was prepared in anticipation of litigation that might be initiated by or on behalf of those injured in the accident.

### III. *The Burden of Establishing Substantial Need*

Since The Hartford report was prepared in anticipation of litigation, McCullough must demonstrate a substantial need for the document in order to procure it in discovery. Rule 4:1(b)(3). McCullough has not met that burden.

McCullough's putative need for The Hartford report is based upon the premise that Counts made irreconcilable statements with respect to his role in the accident. McCullough argues that these inconsistencies appear in his deposition, where Counts indicated that he was traveling fifty miles per hour when he saw brake lights five car lengths ahead of him, and in his answers to interrogatories, where Counts stated that he was "paying full time and attention to vehicles and traffic around him" but was nevertheless unable to avoid a collision. McCullough argues that she has a substantial need to clarify these inconsistencies.

I conclude that the above deposition testimony and interrogatory answer are not necessarily inconsistent. When read together, neither statement contradicts the other. A motorist can drive fifty miles per hour while being attentive and still become involved in an automobile accident. Furthermore, the gist of the interrogatory answers is essentially a denial by Counts that he was negligent, more an assertion of law than of fact. Further, it has not been shown that there are not other witnesses who are able to afford facts related to Counts' driving immediately before the accident. McCullough has failed to demonstrate a substantial need for the adjuster's report. *See, Ashmead,* 336 N.W.2d at 201. Accordingly, Plaintiff's Motion to Compel Production of Document or Tangible Thing is denied.