## CIRCUIT COURT OF FAIRFAX COUNTY

George Lopez

v.

Janet Woolever

June 25, 2003

Case No. (Law) 209322

BY JUDGE LESLIE M. ALDEN

This matter came to be heard on the 29th day of May, upon a Motion to Compel Discovery Responses and Motion to Overrule Objections to Propounded Interrogatories and Request for Production of Documents. The issues under advisement are as follows:

(I) Is the loss activity report obtained on the plaintiff by the defendant's insurer privileged under the work product doctrine?

(II) If the loss activity report obtained on the plaintiff by the defendant's insurer is privileged under the work product doctrine, has the plaintiff demonstrated sufficient need for the report such that plaintiff may review it during discovery notwithstanding its privileged status?

Virginia Rule 4:1(b)(3) provides, in pertinent part:

> *Trial Preparation; materials.* – Subject to the provisions of subdivision (b)(4) of this Rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the

party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

For the reasons stated herein, the Court concludes that the loss activity report obtained on the plaintiff by the defendant's insurer is privileged under the work product doctrine. Further, the Court concludes that the plaintiff has not demonstrated sufficient need for the report such that the plaintiff may review it during discovery notwithstanding its privileged status. Thus, the motion to compel is denied.

### Factual Background

Plaintiff alleged that Defendant, while waiting for an escort detail to pass by for Memorial Day, crossed over the road way where she was originally stopped and directed by the police officers to remain, made an illegal U-turn, and drove to another intersection where she ultimately collided with Plaintiff.

Shortly after the accident occurred, Plaintiff received a letter from State Farm, Defendant's insurer, informing Plaintiff of State Farm's privacy policy. Under the heading "information we may collect," the letter indicates that State Farm may collect Plaintiff's driving record and claims history from non-State Farm companies.

Plaintiff filed "Notice of Filing Plaintiff's Interrogatories and Request for Production of Documents," on December 13, 2002. Request for Documents No. 12 requests, "A copy of the loss activity history report obtained on the plaintiff." Defendant filed "Objection to Plaintiff's Interrogatories and Request for Production of Documents," on January 3, 2003. Defendant objects to Request No. 12 to the extent that it seeks information that falls within the confines of the attorney work product doctrine and seeks information that was prepared in anticipation of litigation. Plaintiff filed the instant motion on May 16, 2003.

On May 27, Plaintiff filed, "Plaintiff's Supplemental Memorandum in Support of Motion to Overrule Objections to all Material Regarding Loss Index Activity and Investigation of the Plaintiff." This memorandum deals specifically with any and all investigations that the carrier for the defendant conducted regarding the loss activity history of the defendant.

*Analysis*

A. *The loss activity report obtained on the Plaintiff by the Defendant's insurer is privileged under the work product doctrine.*

Any information regarding Plaintiff's claim history and driving record collected by State Farm is work product because it was prepared in anticipation of litigation and disclosure of the information would permit Plaintiff to discover Defendant's trial preparation. The Virginia Supreme Court has held that material such as interviews, statements, memoranda, correspondence, briefs, mental impressions, and personal beliefs which are prepared by an adversary's counsel with an eye towards litigation may be free from discovery under the attorney work product doctrine. *Commonwealth v. Edwards*, 235 Va. 499, 510, 370 S.E.2d 296 (1988) (citing *Hickman v. Taylor*, 329 U.S. 495, 511, 91 L. Ed. 451, 67 S. Ct. 385 (1947)). The work product doctrine not only applies to material prepared by a party's attorney, but also to material prepared by a party's representative, including that party's insurer. *See* Virginia Rule 4:1(b)(3) (2000). The Fourth Circuit has held that for the attorney work product to apply, the document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual or series of events that reasonably could result in litigation. *National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). Although generally the work product doctrine does not shield against discovery the facts that the adverse party's lawyer or representative has learned, a party may not inquire into the identity of persons that the opposing party's lawyer or representative has interviewed. *See, e.g., Board of Educ. v. Admiral Heating & Ventilating Inc.*, 104 F.R.D. 23, 32 (E.D. Ill. 1984).

1. *State Farm's material was prepared in anticipation of litigation.*

Many courts have observed that the application of the work product doctrine to documents prepared by insurance companies during claims investigations is difficult because the nature of the insurance business is such that an insurance company must investigate a claim prior to determining whether to pay its insured, and thus pre-litigation is the routine business of insurance companies. *See, e.g., St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 197 F.R.D. 620, 635 (N.D. Iowa 2000). Indeed, one Virginia

court has noted that "the cases on the issue of the discoverability of statements taken by insurance adjusters are legion and are in hopeless and irreconcilable conflict." *Estabrook v. Conley*, 42 Va. Cir. 512 (Rockingham 1997). In the context of material prepared by a party's agent, courts have applied contradicting bright-line tests. The Fourth Circuit has endorsed the *Thomas Organ* rule:

> *any* report or statement made by or to a party's agent (other than to an attorney acting in the role of counsellor), which has not been requested by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise must be conclusively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege of new Rule 26(b)(3) and (b)(4).

*McDougall v. Dunn*, 468 F.2d 468, 473 (4th Cir. 1972) (italics in opinion) (quoting *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 372 (N.D. Ill. 1972), and applying to comparable Federal Rules of Discovery). *McDougall* was cited by plaintiff's counsel in oral argument for the instant motion. In contrast to the *Thomas Organ* rule and in the context of liability insurance coverage, New York courts have adopted the following test: "once an accident has arisen, there is little or nothing that the insurer or its employees do with respect to an accident report except in contemplation and in preparation for eventual litigation or for settlement which may avoid the necessity of litigation." *Kandel v. Tocher*, 22 A.D.2d 513, 256 N.Y.S.2d 898, 899 (1965).

The majority of Virginia circuits endorse the *Thomas Organ* rule. *See, e.g., Wood v. Barnhill*, 52 Va. Cir. 274, 275 (Charlottesville 2000); *Whetzel v. McKee*, 44 Va. Cir. 315 (Rockingham 1998). These cases are generally wary of creating an exception to the normal rules of discovery because of the very nature of the insurance company's business. For example, in *Estabrook*, statements taken by an insurance adjuster shortly after the accident were deemed unprotected by the work product doctrine. 42 Va. Cir. at 512. In *Estabrook*, the court recognized the dangers in granting immunity to an insurance adjuster's investigation reports:

> Although it may not be irrational in the litigious society in which we live to assume that litigation will follow any accident,

> this assumption cannot be the predicate for a sweeping claim of work product protection. To accept such a proposition would create a de facto new class of privileged material which would cover virtually all types of routine accident investigations. If there is going to be such a sweeping change in trial practice, it must come from the General Assembly.

*Id.* at 513. In *Estabrook*, the statements were taken before the defendant had retained counsel, before the insurance carrier had assigned counsel to the matter, and before the plaintiff had made or suggested any claim. *Id.*

Still other Virginia courts have moved away from the *Thomas Organ* rule, eschewing the use of bright-line tests in favor of a case-by-case analysis. *See, e.g., Smith v. National R.R. Passenger Corp.*, 22 Va. Cir. 348 (Richmond 1991). The Court in *Smith* explicitly rejected *McDougall*, noting that it amounts to the proposition that, "If [the material] was prepared in the ordinary course of business, it is not protected." *Id.* at 352. The *Smith* court adopted the following test: "if a reasonable person standing in the shoes of the party resisting discovery would have anticipated or reasonably foreseen litigation at the time the material was produced, it should enjoy the qualified protection of attorney work product." *Id.* at 351; *accord Economos v. K Mart*, 33 Va. Cir. 55 (Charlottesville 1993). Similarly, in *State Farm v. Perrigan*, 102 F.R.D. 235, 238 (W.D. Va. 1984), the court pronounced the test, "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Perrigan*, 102 F.R.D. at 238 (citing 8 C. Wright & A. Miller, *Federal Practice & Procedure: Civil*, § 2024 at 198-99 (1970). The *Perrigan* court concluded that this test, "realistically recognizes that at some point an insurance company shifts its activity from the ordinary course of business to anticipation of litigation, and no hard and fast rule governs when this change occurs." *Id.* This distinction lies at the pivotal point, "where the probability of litigating the claim is substantial and imminent." *Id.* Thus, the decision of whether the insurance company's investigatory reports are discoverable, "depends on the facts of each case." *Id.*

One fact used by many courts in determining whether the work product doctrine applies is the context in which the materials are prepared. These courts draw a distinction between first party and third party liability coverage. *See, e.g., McCullough v. Standard Pressing Machines*, 39 Va. Cir. 191 (Fairfax 1996); *accord St. Paul Reinsurance Co.*, 197 F.R.D. at 636 ("the

court is itself persuaded that such a distinction has merit.") In *McCullough*, Judge Vierreg wrote that most of the cases denying work product protection to adjuster reports involve "first party" insurance coverage as distinguished from "third party" or liability insurance coverage. 39 Va. Cir. at 192. In the case of first party liability, the insurer has a duty to investigate, thus any investigation fulfills this investigatory duty in the ordinary course of business. *Id. See also St. Paul Reinsurance Co.*, where the case involved a first-party bad faith claim. The court concluded that an investigation of whether coverage exists is required and the conduct of that much of its investigation is assuredly in the ordinary course of business, not in anticipation of litigation. 197 F.R.D. at 636. In the case of third party liability insurance coverage, however, an insured obtains insurance to protect against liability claims of third persons, which are established in favor of the third party against the insured by litigation in a court of law. *See, e.g., McCullough*, 39 Va. Cir. at 192. Thus, when an insured is involved in an insured event occurrence, such as an automobile accident, reasonably giving rise to liability, the liability insurer has an incentive to investigate the circumstances surrounding the occurrence in order to fulfill its obligation to its insured to defend against a third party potential action. *Id.* In the end, liability insurance is essentially "litigation insurance." *Id.* (citing *Kandel*, 256 N.Y.S.2d at 899). *See also, Ashmead v. Harris*, 336 N.W.2d 197 (Iowa 1983); *Fontaine v. Sunflower Beef Carrier, Inc.*, 87 F.R.D. 89 (E.D. Mo. 1980).

Any bright-line rule excluding an insurance company's investigation from work product protection runs counter to common construction of the work product doctrine. *See, e.g., Edwards*, 235 Va. 499 at 510; *Perrigan*, 102 F.R.D. at 238. Similarly, a bright-line rule granting work product protection to all materials prepared by an insurance company in its investigation is over-broad. *See, e.g., Estabrook*, 42 Va. Cir. at 512; *Wood*, 52 Va. Cir. at 275. Thus, the Court concludes that determination of whether the investigation was performed in the first party liability or third party liability context is not dispositive. A case-by-case analysis is required to determine whether the doctrine applies.

The instant controversy relates to whether State Farm's investigation into Plaintiff's claim history was done in anticipation of litigation by Plaintiff against Defendant, or whether it was done pursuant to State Farm's ordinary course of business. Plaintiff's argument rests on the letter from State Farm to Plaintiff. Plaintiff asserts that, "the unsolicited correspondence disclosed the intention of State Farm to conduct this inquiry into the claims history of the

plaintiff independent of initiation of litigation. It cannot be the work product of counsel since it is apparently a business activity of State Farm as part of the regular business practice of claims management." *See Pl.'s Supp. Mem.* at 2.

State Farm's letter is not independent of the initiation of litigation. Although the letter begins, "Dear State Farm Consumer, "the first line of the letter reads, "you have been identified as having been involved in an accident with a State Farm insured, following is our privacy policy." *See Pl.'s Supp. Mem.* app. There is no evidence to suggest that but for the accident, State Farm would have contacted Plaintiff, much less conducted any investigation of Plaintiff's claim history. Thus, in light of the factual record in this particular case, any materials prepared by State Farm in its investigation can fairly be said to have been prepared or obtained because of the prospect of litigation.

Significantly, the letter directs Plaintiff to "INFORMATION WE *MAY* COLLECT." *Pl.'s Supp. Mem.* app. (italics added). Rather than indicating that the information has been collected or will be collected as a matter of course, this statement shows that it is in State Farm's discretion to collect this information. The letter is entitled "Notice of Privacy Policy to Consumers," and throughout the letter are references to Plaintiff's privacy. For example, after the introductory paragraph, the letter reads, "we take your personal privacy seriously. The remainder of this letter is intended to inform you of our policies for collecting, using, securing, and sharing non-public personal information." *Pl.'s Supp. Mem.* app. Overall, the letter is simply a notice to alert Plaintiff of State Farm's privacy policy and that State Farm *may* collect personal information. It does not express State Farm's intention to actually prepare material. Thus, contrary to Plaintiff's assertions, the letter does not disclose that any potential investigation of Plaintiff's claims history is part of the regular business practice of claims management.

*2. Any disclosure of material obtained by State Farm regarding Plaintiff's claim history would afford Plaintiff significant insights into Defendant's case preparation.*

Generally, the work product doctrine does not shield against discovery of the facts that the adverse party's lawyer or representative has learned, or the persons from whom he has learned such facts, or the existence or nonexistence of documents. *See, e.g., Board of Educ. v. Admiral Heating & Ventilating Inc.*, 104 F.R.D. 23, 32 (E.D. Ill. 1984). Thus, a party may properly inquire into the identity and location of persons having knowledge of relevant facts.

*Id.* A party may not, however, inquire into the identity of persons that the opposing party's lawyer or representative has interviewed. *Id.* To allow a party to do so would be to, "afford them the potential for significant insights into the defense [representatives'] preparation of their case (and thus their mental processes)." *Id.* In *Board of Educ.*, the interrogatory in contention asked the defendants to identify anyone they may have interviewed. 104 F.R.D. at 32. This interrogatory overstepped the bounds for acceptable discovery from an opposing party, because, "the detailed pattern of an investigation and exploration in and of itself is not a proper subject for discovery. *Id.*

Although facts regarding potential sources of information are discoverable, a party may not discover the identity of specific sources of information that an opposing party may have consulted. *Id.* Here, Plaintiff attempts to determine if Defendant used the Comprehensive Loss Activity Exchange or a similar information exchange in the preparation of materials regarding Plaintiff's driving history and claim record. To grant Plaintiff's motion would be tantamount to alerting Plaintiff that this information has been sought out by counsel. This is similar to the situation where a party submits an interrogatory requesting the identity of anyone the opposing party may have interviewed. *See, e.g., Board of Educ.*, 104 F.R.D. at 32. To require Defendant to disclose the information requested by Plaintiff would necessarily answer the question of whether Defendant has consulted a specific source of information as a matter of strategy. This type of information is typically protected under the work product doctrine.

B. *Plaintiff does not demonstrate substantial need or undue hardship to overcome the work product protection.*

Virginia Supreme Court Rule 4:1(b)(3) states that a party may obtain discovery of material prepared in anticipation of litigation by the other party's representative, including his insurer, "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Virginia Rule 4:1(b)(3) (2000). Thus, "the materials covered by the Rule are discoverable even if made in anticipation of litigation if (1) they are relevant to the subject matter of the litigation, (2) the requesting party can show substantial need of them, and (3) their substantial equivalent cannot be obtained without undue hardship." *Covington v. Calvin*, 40 Va. Cir. 489, 491 (Spotsylvania 1996). The burden of

overcoming work product protection, by proving "substantial need" and "undue hardship" is on the party seeking the materials. *State Farm v. Perrigan,* 102 F.R.D. 235, 237 (W.D. Va. 1984) (relying upon *Virginia Electric & Power Co. v. Sun Shipbuilding & Dry Dock Co.,* 68 F.R.D. 397, 410 (E.D. Va. 1975)); *Covington,* 40 Va. Cir. at 493.

"The substantial need prong examines: (1) whether the information is an essential element in the requesting party's case, and (2) whether the party requesting discovery can obtain the facts from an alternate source." *Fletcher v. Union Pacific R.R.,* 194 F.R.D. 666, 671 (S.D. Cal. 2000) (*quoting* 6 James Wm. Moore et al., *Moore's Federal Practice,* § 26.70[5][C], at 26-221 to 26-222 (3d ed. 1999)). *See also National Union Fire Ins. v. Murray Sheet Metal,* 967 F.2d 980, 984-85 (4th Cir. 1992) (holding that a showing of "substantial need" is "based on the document's relevance and importance to the issues in the litigation and the unavailability of the facts in the documents from other sources.")

> Substantial need ... is demonstrated by establishing that the facts contained in the requested documents are essential elements of the requesting party's prima facie case. Common examples of *essential materials* include test results that cannot be duplicated and photographs taken immediately after an accident when the accident scene has since changed. Another example of materials for which a "substantial need" often exist are contemporaneous statements taken from, or made by, parties or witnesses.

*Fletcher,* 194 F.R.D. at 671 (*quoting Moore's Federal Practice,* § 26.70[5][c], at 26-221 to 26-222) (emphasis added in original).

The undue hardship prong examines the burden obtaining the information from an alternate source would impose on the party requesting discovery. *Id.* "The extent to which a party needs information contained in an opponent's work product depends, in large part, on whether the work product is unique. Examples of undue hardship include instances when witnesses cannot recall statements contained in interviews." *In re International Sys. & Controls Corp. Sec. Litig.,* 693 F.2d 1235, 1240 (5th Cir. 1982). "Unusual expense involved in obtaining equivalent information is another factor that may establish undue hardship." *Fletcher,* 194 F.R.D. at 671 (quoting *Castle v. Sangamo Weston, Inc.,* 744 F.2d 1464, 1467 (11th Cir. 1984)).

In the case at hand, Plaintiff does not argue that the production of the loss activity report on him, obtained by Defendant's insurer, will aid him in establishing an essential element of his case. Indeed, there appears to be no relation between the loss activity report on Plaintiff and establishing any element of Plaintiff's claim. Further, this court assumes without deciding that access to such information is as available to Plaintiff as it is to Defendant, thus rendering the issue of undue hardship to Plaintiff moot.

However, Plaintiff argues that the loss activity report should be disclosed, to "avoid the creation of an impeachment issue simply because he could not independently recall a minor accident years ago." *Pl.'s Supp. Mem.* at 2. The United States Supreme Court in *Hickman v. Taylor* established that discovery is proper of documents that "might be useful for purposes of impeachment or corroboration." 329 U.S. 495, 511, 91 L. Ed. 451, 67 S. Ct. 385 (1947).

In this sense, the case at hand is similar to that of cases involving a plaintiff's request for the production of surveillance materials relating to the plaintiff's activities. In these cases, courts have found "the concept of the discovery Rules included in the Rules of Virginia Supreme Court is to encourage the reduction or elimination of surprises during the trial of the case and, hopefully, the fairness of the judicial process, thus expediting trials and even leading to possible settlement of cases or issues within cases," and so, the surveillance materials have been subject to disclosure. *See Fender v. Norfolk Southern Ry.*, 55 Va. Cir. 344, 345 (Norfolk 2001). *See also Gutshall v. New Prime, Inc.*, 196 F.R.D. 43 (W.D. Va. 2000); *Gibson by Gibson v. AMTRAK*, 170 F.R.D. 408 (E.D. Pa. 1997); *Ward v. CSX Transp., Inc.*, 161 F.R.D. 38 (E.D. N.C. 1995); *Wegner v. Cliff Viessman, Inc.*, 153 F.R.D. 154, 159 (N.D. Iowa 1994).

In such cases, the courts have found that "a videotape might be subject to interpretation depending perhaps upon angles, distances, lighting conditions or any other number of factors, thus denying a party 'the substantial equivalent of the materials by other means' as contemplated by the Rule." *Fender*, 55 Va. Cir. at 345. *See also Gutshall*, 196 F.R.D. at 46 (quoting *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 586 (S.D. Tex. 1996)) (finding that it is impossible to procure the substantial equivalent of such evidence without undue hardship, as videotape "fixes information available at a particular time and a particular place under particular circumstances, and therefore cannot be duplicated"); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102 (E.D. N.C. 1993) (finding substantial need "since Plaintiff's past activities can no longer be filmed.")

In the instant circumstances, this court assumes that the loss activity report that Plaintiff seeks is available to Plaintiff from the same or alternate sources for a reasonable fee, so that the loss activity report obtained by Defendant's insurer can be duplicated or obtained from alternate sources. Thus, despite the belief that disclosure of the loss activity report would "encourage the reduction or elimination of surprises during trial," in light of Plaintiff's failure to meet his burden of proof, this court finds no need to compel disclosure of such privileged work product information.

Accordingly, the Motion to Compel is denied.