# CIRCUIT COURT OF THE CITY OF NORFOLK

Norma J. Hicks,
administrator
of the estate of
Jonathan Bernard Hicks,
deceased

v.

Ronnie Eugene Pruden
and Sentara Hospitals

May 24, 2016

Case No. CL15-10365

By Judge David W. Lannetti

Plaintiff Norma J. Hicks ("Hicks"), in her capacity as administrator of the estate of Jonathan Bernard Hicks (the "Estate"), and Defendants Ronnie Eugene Pruden and Sentara Hospitals ("Sentara") appeared by counsel before the Court on May 5, 2016, for a hearing on Hicks's Motion To Compel, proper notice having been given to all parties. Hicks moved to compel production of: (1) Pruden's recorded statements provided to a claims adjuster acting on behalf of Sentara's insurance carrier; and (2) the contents of Pruden's personnel file. At the conclusion of the Hearing, the Court took the motion under advisement and ordered production of the requested documents for an *in camera* review.

Now the Court, after reviewing the related briefs, considering the arguments at the Hearing, conducting an *in camera* review of the relevant materials, and consulting applicable authorities, rules as follows.

### *Pruden's Recorded Statements Provided to the Claims Adjuster*

This lawsuit stems from a car accident in which "Pruden was operating a vehicle owned by [his employer,] Sentara . . . at approximately 6:45 a.m. on April 15, 2015," when he merged into the lane to his left on Interstate 64 westbound in the City of Norfolk, resulting in a collision involving Pruden and Jonathan Hicks, who was operating a motorcycle traveling in the same

direction. (Compl. 2, 3.) The motorcycle hit Pruden's vehicle from behind. (*Id.* at 5.) As a result of injuries sustained during the collision, Jonathan Hicks died at the scene of the accident. (*Id.*) Although Pruden was not cited by law enforcement for any traffic infractions, a law enforcement investigation regarding fault is ongoing. (Br. in Opp'n 4.)

After driving directly from the scene of the accident to Sentara Hospitals, Pruden met with a claims adjuster acting on behalf of his and Sentara's insurance carrier. (Def. Br. in Opp'n 4; Pl. Resp. to Def. Br. in Opp'n. 2.) He completed the required Automobile Loss Notice and was interviewed by the claims adjuster, who took notes related to the interview. (Def. Br. in Opp'n 4.) The claims adjuster sent an email to a Williams Mullen attorney at 8:36 a.m. on the morning of the accident requesting that he call the claims adjuster "at [his] convenience" because she had "a case [she] would like to discuss with [him]." (*Id.* Ex. A.) No evidence regarding the response, if any, to the email was presented to the Court.

Hicks seeks production of the Automobile Loss Notice and the claims adjuster's notes. (Mot. To Compel 2.) Pruden and Sentara oppose producing these documents, contending that they were "prepared in anticipation of litigation and [are] protected by the work product doctrine." (Mot. To Compel Ex. A, at 11.)

The Virginia appellate courts have not established a definitive test to identify whether statements made to insurance claims adjusters are privileged materials prepared in anticipation of litigation or routine discoverable documents prepared in the ordinary course of business. Virginia circuit courts, when conducting such an analysis, have used one of two separate tests: a "bright-line" rule and a "case-by-case" test. *See Cranley v. Benchmark Mgmt. Co.*, 78 Va. Cir. 353, 355 (Loudoun Cnty. 2009). "Under the 'bright-line rule[,]' work product protection comes into effect when an attorney becomes involved in the case. A 'case by case' test is based upon a reasonable foreseeability that litigation could arise considering the factors of the case." (*Id.*)

### Bright-Line Rule

Under the bright-line rule, also known as the "*Thomas Organ* rule":

> [A]ny rule or statement made by or to a party's agent (other than to an attorney acting in the role of counselor), which has not been *requested by* nor *prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise*[,] must be conclusively presumed to have been made in the ordinary course of business.

*Lopez v. Woolever*, 62 Va. Cir. 198, 201 (Fairfax Cnty. 2003) (emphasis added) (quoting *Thomas Organ Co. v. Jadranska Slobodna Providba*, 54

F.R.D. 367, 372 (N.D. Ill. 1972)); *cf. McKinnon v. Doman*, 72 Va. Cir. 547, 547 (Norfolk 2007) (holding that a statement is not prepared in anticipation of litigation "unless either the defendant had *retained* counsel or plaintiff's counsel had notified the defendant or his insurer of his *retention* before the statement was made" (emphasis added)).

Defendants argue that the claims adjuster "first requested legal representation via an email to Williams Mullen at 8:36 a.m. on April 15, 2015, less than two hours after the accident," and that "Pruden's written narrative [was created] at or around the same time." (Br. in Opp'n 4-5.) The text of the brief email provided by Defendants, which was from the claims adjuster to Williams Mullen, states: "Hi Bob, I have a case I would like to discuss with you. Please call me at your convenience." (*Id.* Ex. A.) The Court does not find this language tantamount to actually involving an attorney in the case, at least as intended by the work product doctrine.

Here, it is clear that Pruden's statements to the Sentara-affiliated claims adjuster were not prepared in anticipation of litigation. Defendants have not provided any evidence that: the statements were requested by or prepared for an attorney; the statements otherwise reflected the employment of an attorney's legal expertise; Pruden had retained counsel; or the Estate's counsel had notified Pruden or his insurer of his retention before the statements were made.

The Court finds that, pursuant to the bright-line rule, Pruden's recorded statements were not prepared in anticipation of litigation.

### Case-by-Case Test

In the case-by-case test, "courts ask whether 'a reasonable person in the shoes of the party resisting discovery would have anticipated or reasonably foreseen litigation at the time the material was produced'." *Piland v. White*, 85 Va. Cir. 45, 47-48 (Chesapeake 2012) (quoting multiple Virginia circuit court cases). Judge Arrington of the Chesapeake Circuit Court, relying heavily on a prior opinion by Judge Frank of the Newport News Circuit Court, identified certain factors she used to analyze whether litigation was anticipated or reasonably foreseeable under the case-by-case test. *Id.* at 48 (citing *Ring v. Mikris, Inc.*, 40 Va. Cir. 528 (Newport News 1996)). The *Piland* court considered the following factors:

> (1) the apparent severity of the plaintiff's injuries; (2) whether it is immediately apparent that any negligence would likely lie solely with the company's insured; (3) whether the plaintiff notified the defendant that the plaintiff would pursue a claim (or that the plaintiff lacked the resources to pay for his medical expenses); (4) whether defendant was notified that plaintiff had retained counsel; (5) whether the person who took the statement is charged with safety responsibilities, or whether the

investigation was made pursuant to policy, statute, regulation, or other non-litigation purpose; (6) whether a statute clearly implicates the insured with liability; (7) whether the insurer investigated the plaintiff's claim in the manner he investigated all other claims with normal procedures; and (8) whether the documents were produced before an insurer formally denied a claim.

*Id.* at 48. The Court finds these factors instructive in analyzing the facts of this case.

A. *Severity of Jonathan Hicks's Injuries*

The injuries sustained by Jonathan Hicks as a result of the collision obviously were severe, as he died at the scene of the accident.

B. *Whether It Is Immediately Apparent that any Negligence Would Likely Lie Solely with Pruden*

It was not immediately apparent that any negligence that may have caused the accident would lie solely with Pruden, as the motorcycle driven by Jonathan Hicks hit Pruden's vehicle from behind, indicating that Jonathan Hicks's motorcycle was traveling at a higher rate of speed than Pruden's vehicle. Further, Pruden was not cited by law enforcement for any traffic infractions; a law enforcement investigation into fault nevertheless is ongoing, about which Pruden was allegedly aware.

C. *Whether Jonathan Hicks Notified Pruden that He Would Pursue a Claim (or that He Lacked the Resources To Pay for His Medical Expenses)*

As noted, Jonathan Hicks died at the scene of the accident. No evidence was provided indicating that, prior to his death, Jonathan Hicks notified Pruden that he would pursue a claim or that he was unable to pay for his medical expenses. Although the Sentara-affiliated claims adjuster apparently contacted an attorney within two hours of the accident, no evidence was presented that Defendants engaged an attorney with the goal of pursuing a claim at the time the statements were made. There also was no evidence that anyone had notified Pruden that a claim might be pursued prior to Pruden's providing statements to the claims adjuster.

D. *Whether Pruden Was Notified that Jonathan Hicks (or the Estate) Had Retained Counsel*

As noted, Jonathan Hicks died at the scene. No evidence was presented that the Estate had actually retained counsel or that Hicks's counsel had notified Defendants or their insurer of his retention before Pruden provided the statements.

E. *Whether the Person Who Took the Statement Is Charged with Safety Responsibilities, or Whether the Investigation Was Made Pursuant to Policy, Statute, Regulation, or Other Non-Litigation Purpose*

No evidence was presented indicating that the claims adjuster had any safety responsibilities. The statements, however, arguably were provided for a non-litigation purpose, *i.e.,* the resolution of a potential claim without the need for litigation.

F. *Whether a Statute Clearly Implicates Pruden with Liability*

There is no statute that clearly implicates Pruden with liability.

G. *Whether the Insurer Investigated the Claim in the Manner She Investigated All Other Claims with Normal Procedures*

Defendants state that "Sentara did not routinely authorize private investigators and accident reconstructionists – as it did in this case at the direction of defense counsel – within 24 hours of incident" and that "Sentara responded differently than it typically does in the ordinary course of business." (Br. in Opp'n. 4.) Nevertheless, it is undisputed that the claims adjuster "was *required* to secure [Automobile Loss Notices] when accidents occurred." (*Id.* (emphasis added).) Testimony at the Hearing indicated that the type of interview in which Pruden participated is conducted only in serious situations. The testimony, however, did not demonstrate — nor was any other evidence provided — that the conduct of Pruden's interview with the Sentara-affiliated claims adjuster was synonymous with anticipated litigation, and the Court, therefore, is not willing to equate the two.

H. *Whether the Documents Were Produced Before an Insurer Formally Denied a Claim*

This final factor is not relevant to this case, as the insurer did not formally deny a claim.

In light of the Court's analysis of the eight factors identified by Judge Arrington, the Court finds that, pursuant to the case-by-case test, Pruden's recorded statements were not prepared in anticipation of litigation.

Although the majority of Virginia circuit courts applied the bright-line rule at one time, the current trend appears to have shifted toward applying the case-by-case test. *Compare Lopez v. Woolever,* 62 Va. Cir. 198, 201-02 (Fairfax Cnty. 2003) (noting that, as of 2003, "[t]he majority of Virginia Circuits endorse the *Thomas Organ* rule") *with Piland v. White,* 85 Va. Cir. 45 (Chesapeake 2012); *Lowe v. Norfolk & S. Ry.,* 81 Va. Cir. 221 (Hopewell 2010); *Cranley v. Benchmark Mgmt. Co.,* 78 Va. Cir. 353 (Loudoun Cnty. 2009); *Veney v. Duke,* 69 Va. Cir. 209 (Fairfax Cnty. 2005); *Wilson v. Norfolk & Portsmouth Belt Line RR.,* 69 Va. Cir. 153 (Portsmouth 2005);

*Lopez*, 62 Va. Cir. 198. Here, however, the Court need not decide which test to apply because both tests indicate that the statements were provided to the claims adjuster in the normal course of business and not in anticipation of litigation. The statements, therefore, are not protected from discovery by the work product doctrine.

Additionally, an *in camera* review of the recorded statements did not reveal anything indicating that they were prepared in anticipation of litigation or were anything but routine post-accident statement-gathering.

### Pruden's Sentara Personnel File

Hicks also seeks to compel production of Pruden's Sentara personnel file, *i.e.,* the personnel file for a single individual. Since the motion was initially filed, Hicks narrowed its request, limiting it to "information regarding [Pruden's] hiring, employment, any disciplinary actions, any statements on file, any promotions/demotions, and/or transfers." (Pl. Resp. to Def. Br. in Opp'n. 6.) The Court finds Hicks's amended request reasonable and relevant under Rule 4:1 of the Rules of Supreme Court of Virginia. Va. Sup. Ct. R. 4.1 ("Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . and appears reasonably calculated to lead to the discovery of admissible evidence.").

For the reasons stated herein, the Court grants Hicks's Motion To Compel production of documents containing statements made by Pruden to the Sentara-affiliated claims adjuster and grants Hicks's Motion To Compel production of Pruden's Sentara personnel file with regard to the limited topics identified by Hicks, *i.e.,* information regarding [Pruden's] hiring, employment, any disciplinary actions, any statements on file, any promotions/demotions, and/or transfers.