## CIRCUIT COURT OF LOUDOUN COUNTY

Gregory Cranley

    v.

Benchmark Management Co. et al.

               Case No. (Civil) 49978

Mark Vandegrift

    v.

Benchmark Management Co. et al.

               Case No. (Civil) 49979

               May 28, 2009

BY JUDGE JAMES H. CHAMBLIN

These cases came before the Court on March 2, 2009, for argument on a Motion to Compel filed by the Plaintiff in each case. Each Plaintiff seeks the production of certain documents, which the Defendant, Benchmark Management Company ("BMC"), claims are protected from production by the attorney-client privilege and/or the work product doctrine.

At the conclusion of argument on March 2, 2009, I ordered counsel for BMC to provide copies of the disputed documents for me to review *in camera* before a further hearing to determine the facts applicable to BMC's position and for further argument.

In a conference call with counsel on March 20, 2009, it was agreed that the trial set to commence on April 21, 2009, would be continued and the further hearing on the two Motions to Compel would be held on April 21, 2009.

After consideration of the evidence and argument of counsel presented on April 21, 2009, the two Motions to Compel are denied.

Counsel for the two Plaintiffs limited the Motions to Compel to the following:

1. Three requests contained in a letter from Mr. Plofchan to Mr. DiNucci dated January 27, 2009 (Exhibit C to each Motion to Compel) as follows:

(a) Request # 3. A copy of any and all bills for the four non-member guests involved in the September 15, 2007, incident.

(b) Request # 11. A copy of any handbook, written policies, job descriptions, or list of duties. . . .

(c) Request # 12. A copy of any written policies relating to the service of alcohol to intoxicated guests.

2. The first 23 items listed in II. B. (*Internal Lansdowne Documents*) of the Privilege Log pursuant to Rule 4:1 provided by BMC on February 2, 2009.

At the conclusion of the argument as to the items in paragraph 1 above, I denied the Motions to Compel as to those items because I found that the requested documents had been produced by BMC.

BMC has refused to produce the first 23 items of II. B. of the Privilege Log because it claims they are not discoverable under the work product doctrine. The Plaintiffs dispute the applicability of the work product doctrine to these items because they were generated before either Plaintiff indicated that he was contemplating any legal action.

Counsel are fully aware of all the evidence presented on April 21, 2009, and the other facts and circumstances of these cases. Therefore, there is no need to explain such evidence, facts, or circumstances except as needed to explain my decision.

As argued by counsel, the crucial issue is whether the 23 documents sought by the Plaintiffs were prepared in anticipation of litigation. Under Rule 4:1(b)(3), a party may obtain discovery of documents prepared in anticipation of litigation only upon a showing of a "substantial need" of the documents and the inability to obtain the substantial equivalent of the documents without "undue hardship." The Plaintiffs' Motions to Compel do not contain either a "substantial need" or an "undue hardship" argument. Therefore, Plaintiffs' counsel did not pursue such an argument, but merely argues that the documents were not prepared in anticipation of litigation.

BMC does not argue that the documents are not otherwise discoverable, but relies solely on the work product doctrine.

The requested documents all concern the events of an incident that occurred on September 15, 2007, at Pub 46 at the Golf Club of Lansdowne ("Golf Club"), which led to the termination of the Plaintiffs as members of the Golf Club, which led to this litigation. BMC is the management company for the Lansdowne Resort where the Golf Club is located.

It appears that, in Virginia, courts have differed in what test to apply to determine if something was prepared in anticipation of litigation. Some courts appear to use a "bright-line rule" test, while others use a "case by case" test.

Under the "bright-line rule" work product protection comes into effect when an attorney becomes involved in the case. A "case by case" test is based upon a reasonable foreseeability that litigation could arise considering the factors of the case.

Judge W. Allan Sharrett of the Brunswick Circuit Court sets forth a good analysis of the two tests in *Hawkins v. Norfolk Southern Ry.*, 71 Va. Cir. 285 (2006) (a case involving an insurance adjuster's log).

All things considered, I think that a "case by case" test is best because things can be done in anticipation of litigation before an attorney becomes involved.

All the requested documents concern what management considered "a very serious matter" (see Defendants' Exhibit 1, the e-mail dated September 17, 2009, from Doug Rook, Director of Golf Club Operations for BMC, to the Plaintiff, Gregory Cranley) or a "severe incident" (per Mr. Rook's testimony on April 21, 2009) that could lead to suspension or revocation of Golf Club memberships.

At the time of the incident, BMC had in place a policy that, if there was an incident, its security officers would investigate and prepare a written report. Mr. Rook testified that the policy existed to protect from litigation.

I think that, considering the nature of the incident as alleged in the second amended complaints, it would have been reasonably foreseeable right after the incident that litigation would arise not only against BMC, but also by BMC. The Plaintiffs allege in their second amended complaints (see paragraph 42 of Cranley's and paragraph 46 of Vandegrift's) that all the acts taken by BMC were done because of the fear of litigation by the Plaintiffs.

We live in very litigious times. Persons bring suit now for almost anything, and large companies with deep pockets are especially vulnerable to litigation. Hence, such companies need to do whatever is necessary to protect themselves if sued. This is exactly what BMC did here.

If there is any doubt about when work product protection may have arisen, then it certainly arose when Mr. Rook received an e-mail on September 17, 2007, stating "I will keep my legal options opened, as I was assaulted by the resort guests in question." See Defendant's Exhibit 1.

I find all the 23 requested documents to be nondiscoverable. The documents provided by Mr. DiNucci for *in camera* review will remain in chambers and not placed in the case file pending further order of the Court.