# CIRCUIT COURT OF THE CITY OF HOPEWELL

Joseph J. Lowe

v.

Norfolk Southern
Railway Co.

September 24, 2010

Case No. (Civil) CL2010-96

By Judge W. Allan Sharrett

This matter comes before the Court on Plaintiff Joseph J. Lowe's motion to compel Defendant Norfolk Southern Railway Company to produce three documents appearing in Defendant's Second Amended Privilege Log that have been withheld from discovery on the ground that they were "Gathered/prepared in Anticipation of Litigation." (Def. Second Amended Privilege Log.) Following a hearing on Plaintiff's motion on July 9, 2010, the Defendant submitted the documents for *in camera* review by the Court. The Court then took the matter under advisement while the parties briefed the issue of whether the documents were prepared in anticipation of litigation and, consequently, protected under the work product doctrine. Having reviewed the documents *in camera* and considered the arguments of counsel, the Court, for the following reasons, grants the motion to compel.

*Summary of Facts*

Plaintiff, a railroad conductor, brings this action under the Federal Employers Liability Act ("FELA") against his employer, the Defendant, for personal injuries arising from a railroad accident that occurred on December 2, 2009, in the City of Hopewell, Virginia. Plaintiff alleges that he was riding on a railcar when the grab iron that he had been holding onto broke, causing him to be thrown from the car. Defendant began an internal investigation of the incident that same day, before any claim was filed.

During the course of written discovery, Defendant prepared a second amended privilege log that identifies certain documents from the internal investigation that are being withheld from discovery for various reasons. Three of those documents are at issue here. They are labeled in the privilege log as follows: (1) "Internal NS Memorandum from Superintendent to General Manager regarding Plaintiff's reportable injury" dated December 2, 2009; (2) "Diagram by NS District Claims Agent, John Fletcher" dated December 3, 2009; and (3) "Computer Diagram of area based on Plaintiff's account of incident" undated.

*Discussion*

Defendant claims that all three documents are protected under the work product doctrine because they were "Gathered/prepared in Anticipation of Litigation." The work product doctrine, as expressed in Virginia Supreme Court Rule 4:1(b)(3), provides for the protection of documents and tangible things prepared "in anticipation of litigation or for trial." Virginia Supreme Court Rule 4:1(b)(3) is modeled after Federal Rule of Civil Procedure 26(b)(3), the purpose of which "is to enable Virginia lawyers and circuit court judges to use federal precedents to guide Virginia practice in the field of discovery." W. Hamilton Bryson, *Bryson on Virginia Civil Procedure*, 9-3 (4th ed. 1997); *see Brown v. Black,* 260 Va. 305, 311 (2000) (federal court interpretation of its rules identical to Virginia rules is informative for Virginia courts, though not binding). "Any 'interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs . . . prepared by an adversary's counsel with an eye toward litigation' may be free from discovery'." *RML Corp. v. Assurance Co. of Am.*, 60 Va. Cir. 269, 274 (Norfolk 2002) (quoting *Hickman v. Taylor,* 329 U.S. 495, 511 (1970)). "When materials are accumulated in the ordinary course of business or for other non-litigation purposes, then they are not protected by the work-product doctrine." *Id.* "The burden to show the work product doctrine applies rests upon the party asserting the work product/ trial preparation privilege." *Wilson v. Norfolk & Portsmouth Belt Line RR.,* 69 Va. Cir. 153, 165 (Portsmouth 2005).

Defendant seeks to rely on this Court's opinion in *Hawkins v. Norfolk Southern Ry.*, 71 Va. Cir. 285 (Brunswick County 2006), for its holding that courts should rely on a "case-by-case analysis" to determine whether documents are prepared in anticipation of litigation. In *Hawkins*, this Court looked to a list of factors outlined in *Ring v. Mikris, Inc.*, 40 Va. Cir. 528, 533 (Newport News 1996). In *Ring*, however, "the documents plaintiff sought to compel were produced by an insurer *after it decided to investigate the claim based on the initial report its insured prepared.* The incident report gave rise to the investigative documents plaintiff sought, but the incident report itself was not what the Court in that case was addressing." *Brown v. Laboratory Corp. of Am.*, 67 Va. Cir. 232, 235 (Rockingham County 2005) (emphasis in original). The court in *Ring* "did not address the initial incident report because it was not sought in plaintiff's motion to compel." *Id.*

Here, what is described in the Second Amended Privilege Log as "Internal NS Memorandum from Superintendent to General Manager regarding Plaintiff's reportable injury" appears to the Court, based on its *in camera* review of the document, to be an initial incident report. The memorandum begins by noting, "The following reportable-injury is reported." That label makes it appear that such reports regularly distinguish between reportable and non-reportable injuries. Indeed, later on in the report there is also a discussion of the Plaintiff's personal history, which includes the number of reportable injuries and non-reportable injuries sustained by the Plaintiff since he began working for the Defendant. Furthermore, the subtitles used in the report are generic indicators, containing only objective information about the incident without any allusions to opinion or strategy. Taken together, these lines indicate that this type of memorandum is generated when any incident occurs, regardless of the type of injury. If so, then the fact that such a form is prepared even for non-reportable injuries, or minor injuries not likely to result in claims against the railroad company, would mean that the form is not necessarily prepared in anticipation of litigation.

The Defendant urges the Court to align itself with either the "reasonably foreseeable" test or the "case-by-case" test adopted in two previous circuit court cases in order to determine what constitutes material prepared in anticipation of litigation. The court in *Smith v. AMTRAK*, 22 Va. Cir. 348 (Richmond 1991), employed a "reasonably foreseeable test" in holding that reports of the railroad's investigation conducted prior to the filing of the plaintiff's lawsuit was protected by the work product doctrine. The court presented the test as follows: "if a reasonable person in the shoes of the party resisting discovery would have anticipated or reasonably foreseen litigation at the time the material was produced, it should enjoy the qualified protection of Rule 4:1(b)(3)." *Id.* at 352 (citation omitted).

The "case-by-case" approach was presented in *Wilson v. Norfolk & Portsmouth Belt Line RR.*, 69 Va. Cir. 153 (Portsmouth 2005). The court articulated the rule as follows:

> [I]f a reasonable person in the shoes of [the railroad company], at the time the documents were produced, would have anticipated or reasonably foreseen litigation, it can be said that such documents were prepared because of anticipated litigation, and therefore in anticipation of litigation, and are entitled to the qualified work product/trial preparation privilege of Virginia Supreme Court Rule 4:1(b)(3).

*Id.* at 175.

This Court agrees with the Defendant, and reaffirms its position previously outlined in *Hawkins*, that a case-by-case approach is appropriate here. A case-by-case approach "is more sound than the approach holding that any document prepared after an accident is automatically covered by the work product privilege. Adopting a case-by-case approach permits the Court to analyze the applicable factors in the context of each individual case." *Wilson*, 69 Va. Cir. at 174.

The Court is of the opinion, however, that the tests outlined in *Smith* and *Wilson* do not end the inquiry of whether these documents were prepared in anticipation of litigation. It is not enough for a reasonable person to anticipate litigation at the time he is preparing documents. Rather, the document itself must be prepared because of the prospect of litigation, and not merely in response to, or as a result of, an incident that could result in litigation. It may be reasonably foreseeable to a railroad company that an incident likely will lead to a claim involving litigation, but that does not mean that everything documenting the incident is prepared in anticipation of litigation. The Court, therefore, adopts a case-by-case approach but declines to extend the type of analysis relied upon in those cases.

In *Wilson*, after the court stated the rule, it then applied that analysis to the facts of the case. First, the court observed that the railroad company responded immediately when the plaintiff reported the incident. *Id.* at 175. Next, it considered the unique negligence standard and law applicable to FELA claims and the fact that 95% of all incident reports result in claims against the railroad company. *Id.*

Third, it noted the testimony of the company's vice president, who "testified that, on the morning plaintiff's injury came to his attention as a result of the 'morning report' — which was within a day or so of the incident itself — he followed his normal practice involving employee injuries and telephoned [the company's] General Counsel." *Id.* at 176. The court also references this statement to make the point that "the fact that [the company] telephoned its attorney when this incident came to its attention — within

a day or so of the incident — also suggests that the various entries on the memorandum were placed there based upon [the company's] reasonably foreseeing litigation." *Id.*

Fourth, the court noted that the company produced in discovery the Personal Injury Report form that it prepared on plaintiff's incident, as well as the "reportable condition" form prepared immediately after the incident. *Id.* The vice president "testified that those documents are not prepared in anticipation of future litigation." *Id.* The court then went on to say that, "[the company] therefore suggests that some of the documents it prepared immediately after the incident were prepared in an effort to plan for possible litigation, while other documents prepared immediately after the incident were not prepared in an effort to plan for possible litigation." *Id.* The court concluded its discussion by observing that "[t]he fact that basic incident information was recorded on documents that were prepared ostensibly in the ordinary course of business tends to suggest that other documents with duplicative information might have another purpose — such as litigation preparation." *Id.*

Finally, the court noted that the plaintiff had not filed a formal claim with the company at the time the memorandum entries were recorded but discounted this factor in light of the significant weight attached to the previous four factors. *Id.* at 176-77. This Court respectfully declines to apply the analysis from *Wilson* to the facts of this case, because it discounts the relevance of the particular document at issue. The Defendant in this case, like the one in *Wilson*, did respond immediately to the incident. But as discussed earlier, the contents of the internal memorandum at issue here suggest that the Defendant responds immediately to any incident involving its employees, regardless of the extent of their injuries or the possibility that a claim might follow. As to the second factor, the Court deems it likely that this Defendant also sees upwards of 90% of all cases involving incident reports result in claims against the company. Even if that is the case, though, "the fact that a defendant anticipates the contingency of litigation . . . does not automatically qualify an 'in house' report as work product." *National Union Fire Ins. Co.*, 967 F.2d at 984 (quoting *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D. D.C. 1982)).

As to the third factor cited in *Wilson*, this Court interprets the vice president's testimony in that case to mean that documents gathered in anticipation of litigation were not prepared until after he had read the "morning report." In other words, any document that may have been prepared in anticipation of litigation would have been in response to the morning report, and not the morning report itself.

In regards to the fourth factor in *Wilson*, the vice president's testimony is intriguing. He acknowledged that some of the documents prepared immediately after the accident were not prepared in anticipation of litigation, while some others were. The court attempted to limit that

testimony by suggesting that basic facts about the incident could have been recorded on multiple documents and that, since some of those documents were prepared in the ordinary course of business, then other documents might therefore have been prepared in anticipation of litigation.

If that were true in this case, it could mean that many of the documents prepared by the Defendant during its internal investigation of the incident were not prepared in anticipation of litigation. In Defendant's brief on this matter, it identifies at least eight documents that were prepared in response to the incident and have since been produced to the Plaintiff, "all of which contain information regarding the incident." (See Def. Mem. in Opp. p. 2 & n. 1.) The mere fact that those documents contain "duplicative information" about the incident would suggest, according to the reasoning in *Wilson*, that certain of those eight documents might have been prepared in anticipation of litigation.

Even if that were not true, and presumably it is not, the Defendant in this case has not carried the burden of proof of establishing that the memorandum from the superintendent to the general manager was prepared because of the prospect of litigation rather than because of some other non-litigation purpose. In its brief to the Court, the Defendant "maintains that the diagrams and memorandum at issue in Plaintiff's Motion to Compel are privileged because . . . it was reasonably foreseeable at the time these materials were prepared that the incident would result in litigation." (Def. Mem. in Opp. p. 2.) All of that may be true. Indeed, the Court is inclined to think that litigation based on the incident here was reasonably foreseeable. But the fact that it was reasonably foreseeable that the incident would result in litigation does not automatically mean that this particular document was prepared in anticipation of litigation.

Moreover, even if it were reasonably foreseeable to the superintendent *at the time he was preparing the form* that the incident would result in litigation, the Defendant has failed to show that he was preparing this particular form with that result in mind. Because the Court believes the superintendent likely would have followed the company's reporting process and prepared a report in response to this incident even if it had resulted in a non-reportable injury, the Court sees his report on the objective facts of a reportable injury as a routine action, and not as something prepared in anticipation of litigation.

Finally, the Defendant fails to distinguish this particular document from other materials prepared in response to the incident that already have been deemed to be prepared in the ordinary course of business or for some other non-litigation purpose. For these reasons, the Court finds that the internal memorandum was not prepared in anticipation of litigation.

The Defendant also has failed to carry its burden of establishing that the two diagrams were prepared in anticipation of litigation. The diagram of the area of the accident sketched by the district claims agent is dated

December 3, 2009, the day after the incident. The undated computer diagram likewise appears to have been created soon after the incident was reported. Both diagrams followed up the initial incident report. They complete that investigation by providing a helpful rendition of the alignment of the railroad cars when the incident occurred. As such, they were not prepared with the prospect of litigation in mind.

The Court understands the Defendant's reluctance to produce what it considers in-house investigative documents, but, in this case, the internal memorandum and the two diagrams were not prepared in anticipation of litigation. They were prepared pursuant to the company's regular reporting process and simply provide objective documentation of the incident, which helps protect both parties. These documents, like the ones previously produced to the Plaintiff, "aid in the fair resolution of disputes because they are taken immediately after the incident, involve a material issue, and assist in the preparation of trial." *Brown v. Laboratory Corp. of Am.*, 67 Va. Cir. 232, 234 (Rockingham County 2005) (citing *McDougall v. Dunn*, 468 F.2d 468, 474 (4th Cir. 1972)).

Having conducted an *in camera* inspection, the Court finds that everything in these three documents is discoverable. The documents do not contain mental impressions of the Defendant's agent or strategies of an attorney. Rather, the internal memorandum reports objective facts, and the two diagrams provide a concise rendition of the area of the accident. Their production clarifies the issues between the parties, helps ascertain the facts relative to those issues, and saves the expense of discovery.

For the foregoing reasons, Plaintiff's motion to compel is granted. Defendant is ordered to produce the documents within ten days from the date hereof.